11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Frank Masias,
Jr.

Appellant

Vs.      
            No. 11-01-00207-CR  -- 
Appeal from Knox County

State of Texas

Appellee

 

The trial
court convicted Frank Masias, Jr. of engaging in organized criminal activity by
conspiring to deliver more than 4 grams but less than 200 grams of
cocaine.  TEX. PENAL CODE ANN. ' 71.02 (Vernon Supp. 2002).  The trial court assessed punishment at
confinement for 20 years.  We affirm.[1]  

Appellant
has briefed three points of error.  In
the first point, he challenges the sufficiency of the evidence by contending
that the accomplice witnesses= testimony was not corroborated by evidence tending to connect
appellant to the offense.  In his second
point, appellant contends that the evidence is legally insufficient because a
fatal variance exists between the allegations charged in the indictment and the
evidence proved at trial.  In his final
point, appellant argues that the trial court erred in denying his motion for
new trial, which was based upon the State=s failure to produce exculpatory evidence.  








In order
to support a conviction based upon the testimony of an accomplice, there must
be corroborating evidence that tends to connect the accused with the
offense.  TEX. CODE CRIM. PRO. ANN. art.
38.14 (Vernon 1979); Reed v. State, 744 S.W.2d 112 (Tex.Cr.App.1988).  To determine the sufficiency of the
corroboration, we must examine the testimony of the non‑accomplice
witnesses and determine if there is inculpatory evidence "tending to
connect" appellant to the crime. 
Reed v. State, supra at 127.  An
accomplice witness need not be corroborated in all his testimony, and the
corroboration need not directly link the accused to the crime or be sufficient
in itself to establish guilt.  Reed v.
State, supra. 

The record
in this case shows that two non-accomplice witnesses testified regarding an
undercover sting operation in which several small purchases of cocaine were
made in 1999 in Knox County.  During
this time period, an undercover confidential informant bought cocaine from some
of appellant=s codefendants:  Mary Alice Masias, Alfred Masias, Jr. (a/k/a Junior Masias), and
Dennis Masias.  After conducting the
sting operation, the police determined that the local dealer=s supply of cocaine came from Austin from
appellant, David Castillo, and Johnny Masias. 
The testimony of Alfred, Dennis, Mary, Christy Masias Gallegos, and
Natalie Michelle Dempsey  supported the
conclusion that Alfred=s and
Dennis=s supply of cocaine came, in part, from
appellant.  Alfred, Dennis, Mary, and
Christy were all accomplices as a matter of law.  The issue is whether Natalie was an accomplice witness.  

The record
shows that Natalie made two trips to Austin during which cocaine was purchased
from appellant and/or David.  On the
first trip, Alfred, Dennis, and Daniella Martinez picked Natalie up at her
mother=s house in Gatesville.  From there, they went to Austin and spent
the night.  Natalie testified that, at
first, she did not know the purpose of the trip to Austin, although she figured
it out while in Austin.  She did not
actually witness the transfer of cocaine on this occasion because she and
Daniella had been instructed to go to another room.  The next day, they left Austin and drove to Knox County, but
Natalie did not know where in the vehicle the cocaine was located.  Natalie did not assist in purchasing,
hiding, or selling the cocaine.  The
next month, Natalie accompanied Alfred on another trip to Austin.  This time, she knew the purpose of the trip
and also witnessed the transaction. 
Again, she did not conspire or assist in purchasing, hiding, or selling
the cocaine.  However, on this trip, she
knew where the cocaine was located in the vehicle and had been instructed by
Alfred to hide it in her bra if they were stopped by police.  In answer to defense counsel=s question as to whether she was helping
Alfred, Natalie replied, AWell, I guess.@  According to Natalie, they were not stopped;
and she did not put the cocaine in her bra or actually do any act to help
Alfred.  No criminal charges were filed
against Natalie. 








An
accomplice witness is one who participates with the accused before, during, or
after the commission of the crime. 
McFarland v. State, 928 S.W.2d 482, 514 (Tex.Cr.App.1996), cert. den=d, 519 U.S. 1119 (1997); Kunkle v. State, 771 S.W.2d 435, 439 (Tex.Cr.App.1986),
cert. den=d, 492 U.S. 925 (1989).  The participation must involve an
affirmative act committed by the witness to promote the commission of the
offense.  McFarland v. State, supra;
Kunkle v. State, supra at 441.  The mere
knowledge of the offense, the failure to disclose the offense, or even the
concealing of the offense does not make a witness an accomplice.  In order to be an accomplice as a matter of
law, the witness must be susceptible to prosecution for the offense with which
the accused is charged.  McFarland v.
State, supra; Kunkle v. State, supra at 439. 
Since the evidence does not show that she performed an affirmative act
promoting the offense, Natalie was not an accomplice as a matter of law.  Consequently, her status was an issue for the
trial court, as the trier of fact, to determine.  Dawson v. State, 472 S.W.2d 775, 776 (Tex.Cr.App.1971).  The trial court apparently concluded that
Natalie was not an accomplice.  Because
there is evidence to support this conclusion, we will not disturb the trial
court=s decision. 
See Dawson v. State, supra.  

Now that
we have determined Natalie=s status, we will address the sufficiency of the corroborating
evidence.  The accomplice testimony
indicates that Alfred and others made several trips to Austin in 1999 to buy
cocaine for the Masias family to sell in Knox County.  During each trip, two to three ounces of cocaine were purchased
from appellant and/or David.  An ounce of
cocaine equals 28 grams.  The
accomplices indicated that appellant knew that the cocaine was to be resold in
the Knox County area.  On one occasion
when appellant came to Knox County for a family reunion that was held around
Thanksgiving, he delivered the cocaine to Alfred.  Alfred testified that he had wired money to appellant to pay for
this particular transaction.  Western
Union business records were introduced showing that Alfred wired $1,875 to
appellant on November 24, 1999.  Dennis
testified regarding various purchases from appellant.  On one of these occasions, Dennis had Christy wire money to
appellant=s wife to pay appellant for two ounces of
cocaine.  Western Union business records
were introduced showing that Christy had wired $1,450 to appellant=s wife, Christina Masias, in April.  








We hold
that the non-accomplice testimony sufficiently corroborated that of the
accomplices.  Natalie testified that,
although she did not witness the actual transfer of cocaine during her first
trip to Austin, she thought that the cocaine was purchased from appellant and
David.  Natalie identified both
appellant and David in court.  During
the second trip to Austin, she witnessed the transaction and saw David transfer
the cocaine to Alfred.  Natalie=s testimony tends to connect appellant with
the offense.  Furthermore, the various
business records also tend to corroborate the accomplice testimony.  In addition to the Western Union records,
records from a Motel 6 were introduced. 
Alfred, Dennis, and Natalie testified that Alfred had rented two rooms
at a Motel 6 and that a drug transaction occurred in one of those rooms.  Business records from the Motel 6 showed
that Alfred had, in fact, rented two rooms on the date that Natalie made her
first trip to Austin.  Records from
Alfred=s and David=s cell phones were also introduced into evidence.  They reflected that calls were made between
these two phones on the date of one of the alleged transactions.  Because we find that the non-accomplice
evidence tends to connect appellant with the offense, we overrule the first
point of error.  

In the
second point, appellant contends that the evidence is legally insufficient
because there is a fatal variance between the indictment and the State=s proof at trial.  This argument is based upon the indictment=s inclusion of Lee Edward Shields and Cindy
Masias as members of the combination that committed the offense.  The State offered no evidence at trial
indicating that these two persons participated in the combination.  However, the State offered evidence showing
that the other seven named defendants participated in the combination.  In Gollihar v. State, 46 S.W.3d 243
(Tex.Cr.App.2001), the Texas Court of Criminal Appeals reaffirmed the fatal
variance doctrine and adopted the following materiality test to determine
whether a variance is fatal: 

A variance between the wording of an indictment and the evidence
presented at trial is fatal only if "it is material and prejudices [the
defendant's] substantial rights." 
When reviewing such a variance, we must determine whether the
indictment, as written, informed the defendant of the charge against him
sufficiently to allow him to prepare an adequate defense at trial, and whether
prosecution under the deficiently drafted indictment would subject the
defendant to the risk of being prosecuted later for the same crime.  








Gollihar v. State, supra
at 257, (quoting United States v. Sprick, 233 F.3d 845, 853 (5th Cir.
2000)).  In this case, although there
was a variance between the indictment and the proof at trial, the variance was
not fatal because it did not meet the materiality test.  See Fuller v. State, 73 S.W.3d 250
(Tex.Cr.App.2002); Gollihar v. State, supra. 
The indictment was sufficient to inform appellant of the offense and to
avoid the risk of double jeopardy.  The
second point of error is overruled.  

In his
final point, appellant contends that the trial court erred in denying his
motion for new trial.  In the motion,
appellant complained of the State=s failure to produce exculpatory evidence -- the existence of plea
agreements between the State and the State=s witnesses who were codefendants. 
The State had an affirmative duty to disclose this type of impeachment
evidence.  United States v. Bagley, 473
U.S. 667, 676-77 (1985); Etheridge v. State, 903 S.W.2d 1, 20
(Tex.Cr.App.1994), cert. den=d, 516 U.S. 920 (1995).  The
State=s failure to disclose such evidence
constitutes a constitutional violation only if it undermines the confidence in
the outcome of the trial such that there is a reasonable probability that the
result of the proceeding would have been different.  United States v. Bagley, supra at 682; Etheridge v. State,
supra.  Alfred, Dennis, Christy, and
Mary all testified on direct examination that they had negotiated some sort of
plea agreement with the district attorney in exchange for their testimony at
appellant=s trial. 
One month before trial, the State notified appellant that it would call
each of these witnesses to testify at trial. 
As in Etheridge, the existence of the impeaching evidence was
made known to appellant during trial and was available for use to impeach the
witnesses at trial.  We hold that the
confidence in the outcome of appellant=s trial was not undermined. 
Consequently, the trial court did not abuse its discretion in denying
appellant=s motion for new trial.  The third point of error is overruled.  

The
judgment of the trial court is affirmed. 


 

W. G. ARNOT, III  

CHIEF
JUSTICE

August 29, 2002

Do not publish.  See
TEX.R.APP.P. 47.3(b).

Panel consists of:  Arnot, C.J., and 

Wright, J., and McCall, J. 











     [1]On this same date in a companion case, we also affirmed
the conviction of David Castillo, one of appellant=s codefendants. 
See Castillo v. State, No. 11-01-00214-CR (Tex.App. - Eastland, August
29, 2002, no pet=n h.)(not designated for publication).